No. 79-55

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

TERRANCE ANDREW MACKIE,
a/k/a JIM MASON,

Defendant and Appellant.

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Missoula.
Honorable James B. Wheelis, Judge presiding.

Counsel of Record:

For Appellant:

Murray and Holt, Missoula, Montana
Margaret Borg argued, Missoula, Montana

For Respondent:

Hon. Mike Greely, Attorney, General, Helena, Montana
Chris Tweeten argued, Assistant Attorney General,
Helena, Montana
Robert Deschamps III, County Attorney, Missoula,
Montana
Karen S. Townsend, argued, Deputy County Attorney,
Missoula, Montana

Submitted: November 14, 1980

Decided: JAN 21 1981

Filed: JAN 21 1981

Thomas J. Kearney
Clerk

The Honorable Gordon R. Bennett, district judge, sitting for Mr. Justice John C. Sheehy, delivered the Opinion of the Court.

After trial by jury, defendant was convicted in the Fourth Judicial District Court, Missoula County, of sexual intercourse without consent and thereupon sentenced to 20 years at Montana State Prison. He appeals both the conviction and sentence. We affirm.

The following errors are attributed to the trial court:

1. Admitting a photograph depicting abrasions on the victim's back.

2. Allowing three prosecution witnesses to testify about conversations they had with the victim.

3. Refusing to give a special cautionary rape instruction.

4. Utilizing at sentencing psychiatric and presentence investigation reports containing unsubstantiated information.

There was conflicting evidence regarding the events which occurred on the evening of August 29, 1977. The prosecution presented evidence to prove defendant brutally raped a young Missoula woman that night. The defendant claimed the woman voluntarily engaged in sexual intercourse with him. The rape victim testified she went for a drive with the defendant, intending to go to a coffee shop and discuss personal problems developing between defendant and his girlfriend, who was her roommate. Instead of driving to the coffee shop, she said defendant drove her to an isolated area, parked the car, and made sexual advances. She testified that defendant choked and raped her, when she resisted the advances. Defendant testified he and the victim voluntarily engaged in sexual intercourse in the victim's apartment that night. He admitted they did go for

a drive but insisted they merely drove around town.

In his first specification of error, defendant claims the court erred by allowing into evidence a photograph depicting linear abrasions or scratches appearing on the victim's back. He maintains the prosecution presented an insufficient foundation to properly permit the photograph into evidence. We disagree. The nurse who took the picture during an examination of the victim immediately following the incident testified as follows:

> "Q. Miss Sloan, the other day I showed you a picture which is marked as State's Exhibit No. 1; is that correct? A. Yes.
>
> "Q. You took that picture? A. Yes, I did.
>
> ". . .
>
> "Q. Why did you take that picture? A. Because it was visual markings that were clearly seen.
>
> "Q. Did [the victim] say anything to you that made you think that it was necessary to take that picture? A. Yes, she did remark that she got them [the scratches] that evening, or that, you know, at the incident.
>
> "Q. As a result of the alleged incident? A. Yes."

The longstanding rule in Montana is that a photograph is admissible if it "fairly and accurately represents relevant evidence." State v. Jones (1914), 48 Mont. 505, 139 P. 441. It is within the discretion of the trial court to allow into evidence duly verified photographs to aid the jury in its fact-finding process. Fulton v. Chouteau County Farmers' Co. (1934), 98 Mont. 48, 37 P.2d 1025. This photograph, suggesting that force was used by defendant during the incident, was highly relevant to the issue of consent. It tended to corroborate the victim's account of the incident. It was of such poor quality that it could not be considered inflammatory. In fact, it was of such poor quality that it could not be considered prejudicial even if

-3-

it was inadmissible.

Defendant next contends a portion of the testimony of three prosecution witnesses was inadmissible hearsay. These witnesses, two friends of the defendant and a rape counselor, met with the victim the morning after the rape incident. Each witness testified the victim appeared to be frightened and disoriented. Over defense counsel's objection, the following testimony was given:

First witness:

"Q. Did she [the victim] say anything specifically in this ride: A. Just rattling on, saying, 'Get me out of here. The son of a bitch. Get me . . .'

"Q. I'm sorry. I can't hear you. . . A. I'm sorry. 'Son of a bitch. Get me out of here. I have to get out of here. Go faster.' You know, because I was driving the Volkswagon . . .

". . .

"Q. Did . . . [the victim] say anything else? A. She told her, you know, that they --

". . .

"Q. What did she say . . . A. She said she was scared; she couldn't talk to Liz because she was a cop. That she was--I don't remember what else. She was just rattling on, just like she was before.

Second witness:

"Q. What did [the victim] say to you? A. She said, 'Oh, my God.'

"Objection . . .

"Overruled . . .

"Q. Go ahead, you may-- A. She said, 'Why is God doing this to me.'

Rape counselor:

"Q. . . . would you please tell the jury what [the victim] told you about any kind of physical force--

"Objection . . .

"Overruled . . .

"Q. You may answer. A. Okay, [she] told me
that he choked her so much that she thought
she might black out, and that he used a very
threatening voice and used verbal threats
towards her."

Both parties believe the admissibility of these state-
ments is governed by Rule 803(2), Mont.R.Evid., the excited
utterance exception to the hearsay rule, which provides:

"The following are not excluded by the hearsay
rule, even though the declarant is available
as a witness: . . . (2) Excited utterance. A
statement relating to a startling event or
condition made while the declarant was under
the stress of excitement caused by the event
or condition."

Both prosecution and defense agree the alleged rape
would be sufficiently startling to cause the victim to make
excited utterances. They disagree as to whether the
statements here were made "under the stress of excitement"
caused by the rape, thereby qualifying as excited
utterances. The defense contends these statements are
inadmissible because they were made up to four hours after
the alleged rape incident. The prosecution rebuts
defendant's argument by showing that the rape victim here
was suffering from "rape trauma syndrome", a medical term
for the disorientation and shock experienced by rape
victims following a rape assault. These arguments are not
germane as the testimony included above does not contain
hearsay under the Montana Rules of Evidence.

The first two witnesses' statements do not fit within
our definition of a hearsay statement. Rule 801(c),
Mont.R.Evid. defines hearsay as follows:

"Hearsay. Hearsay is a statement, other than
one made by the declarant testifying at the
trial or hearing, offered in evidence to prove
the truth of the matter asserted." (Emphasis
added.)

Clearly, the statements made by the first two witnesses were
not offered to prove the truth of the assertions made

-5-

therein. While they do tend to show that the victim was in a high state of anxiety and, possibly, confusion, the prosecution was obviously not presenting them to prove the lineage of the defendant or anything about the relationship between the victim and the deity. The exclamations themselves cannot possibly be viewed as probative of any element of the crime. The objections to the witnesses recounting them were properly overruled.

The third statement, although hearsay as defined by Rule 801(c), is admissible as a nonhearsay statement under Rule 801(d)(1)(B), Mont.R.Evid.:

> "(d) Statements which are not hearsay. A statement is not hearsay if:
>
> "(1) Prior Statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and <u>the statement is . . .</u> (B) <u>consistent with his testimony and is offered to rebut</u> an express or <u>implied charge</u> against him <u>of subsequent fabrication,</u> improper influence or motive . . ." (Emphasis added.)

The defendant insisted throughout that the sexual intercourse that occurred with the victim was consensual. In order to prove lack of consent, the prosecution called the victim to testify. Upon direct examination the victim testified defendant had choked her to force her to engage in intercourse. Defense counsel on cross-examination attempted to impeach her by asking her to explain why she did not report this choking to the doctor who examined her after the rape incident. After five more witnesses were called by the prosecution, the rape counselor was called and she recounted the purported hearsay regarding the victim's statement about the choking. These circumstances clearly qualify the counselor's testimony as nonhearsay under Rule 801(d)(1)(B), supra. The quoted declarant (rape victim) testified at the trial, she was subject to cross-examination concerning her

-6-

statement, the counselor's statement is consistent with the victim's testimony, and it rebuts an implied charge of fabrication.

The hearsay rule is intended to insure that only reliable evidence of out-of-court declarations is presented to a jury. Testimonial evidence presented at trial may be tested for reliability by requiring the witness offering the testimony to testify under oath, subject to cross-examination. Hearsay evidence, by definition, is evidence that cannot be tested for reliability in this manner. See Commission Comment, Rule 801, Mont.R.Evid. Unless the hearsay evidence can be shown to have some circumstantial guaranty of trustworthiness, its admission is barred. See Commission Comment, Rule 803 and 804, Mont.R.Evid. Prior consistent statements are defined as nonhearsay statements because the reliability of the statement is subject to adversarial testing. The rule provides that the declarer of the prior statement must be present and subject to cross-examination concerning the statement before another witness may be permitted to repeat the declarant's previously made statement. The prior consistent statement is admissible as evidence only when it is necessary to redeem the credibility of the declarant, previously brought into question by the opponent. Under Rule 801(d)(1)(B), the opponent "opens the door" to the admission of prior consistent statements by attempting to discredit the declarant by claiming fabrication. See, Advisory Committee Note, Rule 801(d), Fed.R.Evid. That is exactly what was done here and the court was therefore correct in overruling the objection to the recounting of the victim's prior consistent statement.

Defendant claims the court erred in refusing to give an instruction to the jury that "the accusation of rape . . .

is easy to make, but hard to defend against," an instruction similar to one approved in State v. Smith (1980), ___Mont. ____, 609 P.2d 696, 37 St.Rep. 583. Smith was decided after the time the instruction was refused in this case. The facts here, however, do not justify the use of this instruction. As this Court held in State v. Pecora (1980), ____ Mont. ____, 619 P.2d 173, 37 St.Rep. 1742, the Smith instruction is applicable only if the evidence presented at trial shows: (1) personal enmity existed between the victim and the defendant, and (2) corroborating evidence of the victim's account of the rape incident does not exist. The record in this case is significantly different than the record in Smith. No evidence of manifest malice or motive for revenge between the victim and the defendant was presented during the trial. Further, a good deal of corroborating evidence was presented during the trial, including the testimony of the victim's friends and the physical evidence of the victim's injury. The instruction was properly refused.

The final question has to do with the propriety of the sentencing procedure. Following conviction, defendant requested the court to order that a psychiatric examination and evaluation report be prepared for the court's consideration in sentencing. He specifically requested that Dr. Noel Hoell prepare the report. The court acceded to the request. Dr. Hoell submitted his report to the court after personal interviews with defendant and a review of materials submitted by the defendant and the Missoula county attorney.

The psychiatric report turned out to be unfavorable to defendant's argument for a light prison sentence. It stressed defendant's previous rape charges and described him as a liar and a manipulator. It was used not only by the

court but by a parole and probation officer in preparing the presentence investigation.

Defendant maintains the psychiatric report was "tainted" by the materials provided to Dr. Hoell by the county attorney's office. These materials included references to defendant's criminal record. He claims this information was misleading and contained innuendo and conjecture. Specifically, defendant contends that statements of alleged rape victims made in connection with previous similar charges, on which defendant was acquitted, were included in the materials and thus unfairly influenced the psychiatrist's findings. He contends the court's use of this "tainted" psychiatric report violates the rule that a convicted defendant has a due process guarantee against the imposition of a sentence predicated on misinformation. State v. Orsborn (1976), 170 Mont. 480, 555 P.2d 509.

The entire record demonstrates defendant was clearly accorded sentencing due process, and that the rule in Orsborn, supra, was not violated. He received a copy of both the psychiatric evaluation and the presentence report in time to prepare for the sentencing hearing. The court was fully informed of his contention that a portion of the report was "tainted." He was represented by counsel and was allowed to present evidence to support the taint allegation and to rebut the evaluation conclusions and the presentence report. There was, then, fully sufficient procedural protection to reasonably assure that the sentence was not based on misinformation. See, State v. Higley (No. 80-142, Decided 12/17/80, 37 St.Rep. 1942). There is no indication that the sentence was, in fact, based on misinformation. Cross-examination of all those contributing to a presentence report rests in the discretion of the trial court. Section

46-18-113, MCA.  We find no abuse of that discretion here.

The judgment and sentence are therefore affirmed.


_____
Hon. Gordon R. Bennett,
District Judge, Sitting
in for Mr. Justice John C.
Sheehy


We Concur:


_Frank I. Haswell_____
Chief Justice

_Gene B. Daly_____

_John Conway Harrison_____

_Daniel J. Shea_____
Justices


_case_
This/was submitted prior to January 5, 1981.

-10-