No. 90-220

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA,

      Plaintiff and Respondent,

-vs-

RICKY SCHEFFELMAN,

      Defendant and Appellant.

**FILED**

NOV 18 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Stephen C. Moses; Charles F. Moses argued; Moses Law
Firm, Billings, Montana.

      For Respondent:

          Marc Racicot, Attorney General, Helena, Montana;
Elizabeth S. Baker argued, Assistant Attorney
General, Helena, Montana; Harold F. Hanser, County
Attorney, Billings, Montana; Donna K. Heffington,
Deputy County Attorney.

Submitted: June 11, 1991

Decided: November 18, 1991

Filed:

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Defendant, Ricky Scheffelman, appeals his conviction by a jury of the Thirteenth Judicial District, Yellowstone County, for sexual intercourse without consent and sexual assault. Scheffelman was sentenced to 20 years in prison for sexual intercourse without consent and 15 years for sexual assault. These terms are to be served consecutively. The last ten years of each sentence was suspended. The District Court designated Scheffelman a persistent felony offender and added ten years to each of the above counts to be served consecutively to the above sentences. Scheffelman was designated dangerous for purposes of parole. We reverse.

The issues on appeal are:

1. Whether the District Court erred in admitting the child victim's prior statements;

2. Whether the District Court erred in admitting the testimony of Linda Crummet, a clinical social worker;

3. Whether the defendant was entitled to a mistrial on the ground that one of the jurors failed to disclose during voir dire examination that he was acquainted with a State witness;

4. Whether the defendant was entitled to a mistrial on the ground that a State witness made a remark regarding drug use;

5. Whether the District Court erred in refusing defendant's request to review the victim's psychological records;

6. Whether the District Court erred in instructing the jury;

7. Whether the convictions are supported by substantial evidence;

8. Whether the District Court erred in sentencing defendant.

Defendant, Ricky Scheffelman, was convicted of molesting his step-daughter, S.S., during the period of time between Christmas Eve of 1985 and May of 1986. According to the allegations of the State, Scheffelman entered the victim's bedroom on Christmas Eve of 1985. The victim was asleep in a bed that was shared with her two siblings. Scheffelman laid down next to the bed, reached over the top and fondled the victim. According to the victim's testimony, Scheffelman inserted his fingers into her vagina and "wiggled them around." This conduct continued, on a periodic basis, until May of 1986 when Scheffelman was imprisoned on an unrelated charge.

The victim did not report these incidents to anyone until the spring of 1988, when she was living with her grandmother, Lovyce Smith. At this time Ms. Smith questioned the victim about sexual abuse. Initially, the victim denied that any abuse occurred. However after several discussions of the matter, the victim recanted her earlier denials and told her grandmother that she had, in fact, been sexually molested by the defendant.

Following these revelations Ms. Smith brought the victim to see Pastor Johan Rockstad. The victim told him the same stories she told her grandmother. She also told Pastor Rockstad that the defendant had sexual intercourse with her. When the victim's grandmother questioned her about this incident, the victim admitted that she "lied about that part."

On December 30, 1988, Scheffelman was charged with sexual

intercourse without consent and sexual assault. On November 6, 1989, defendant was convicted of the above-named crimes. Several errors have been set forth in the appeal of those convictions. The facts surrounding these errors will be discussed in greater depth under the appropriate issues contained in this opinion.

## ISSUE I

Whether prior consistent statements of the child witness were properly admitted to rebut the defendant's express and implied charges of fabrication and improper influence.

During trial, the State's attorney in her opening statement, believing that the defendant would attack the victim's credibility through the use of her inconsistent statements, mentioned the prior consistent statements of the victim. She also alluded to the fact that the victim had a motive in reporting Scheffelman's conduct because she did not want him to return to the family home and molest her again. Defendant objected and was overruled. During the State's case in chief, and after the testimony of the victim, which included cross-examination by the defendant, the State sought to introduce prior consistent statements of the victim through the hearsay exclusion contained in Rule 801(d)(1)(B), M.R.Evid. The defendant objected; his objections were overruled and the evidence was introduced.

Scheffelman argues that the District Court improperly allowed these statements into evidence. His argument of this issue has two bases. First he maintains the District Court erred when it allowed the State to introduce impeaching evidence against its own witness.

4

Through its introduction of this evidence, the State was able to introduce several out of court statements made by the victim under Rule 801(d)(1)(B), M.R.Evid. Scheffelman argues that these tactics deprived him of his ability to formulate his own trial strategy because he was forced to react to the strategy set forth by the State. In his second argument, Scheffelman maintains the out of court statements introduced under Rule 801(d)(1)(B), M.R.Evid., should not have been allowed into evidence because they were made after the victim had a motive to falsify. We will address each of these arguments in order.

Rule 801(d)(1)(B), M.R.Evid., provides:

A statement is not hearsay if . . . [t]he declarant testifies at trial . . . and is subject to cross-examination concerning the statement and the statement is . . . consistent with his testimony and is offered to rebut an express or implied charge against him of subsequent fabrication, improper influence or motive[.]

There are four requirements before prior statements qualify for admission under this rule: 1) the declarant must testify and 2) be subject to cross-examination concerning her statement, and 3) the statements to which the witness testifies must be consistent with the declarant's testimony, and 4) the statement must rebut an express or implied charge of fabrication, improper influence or motive. See State v. Mackie (1981), 191 Mont. 138, 622 P.2d 673.

Scheffelman argues that the statements introduced by the State do not qualify for admission under this rule because they were not introduced to rebut a charge of fabrication. As stated above, the State, through its opening statement and through direct examination, introduced several inconsistent statements made by the

5

victim. It also set forth a possible motive that may have led the victim to falsify testimony concerning the defendant's conduct. After this evidence was admitted, the State introduced the testimony of the grandmother, Lovyce Smith; Pastor Rockstad; and also Linda Crummet and Terri Herman. Each of these witnesses repeated statements made by the victim that were consistent with her trial testimony. Their testimony was allowed into evidence under the exception to the hearsay rule provided by Rule 801(d)(1)(B), M.R.Evid.

Scheffelman objected to the statements made by the prosecutor during opening statement concerning the victim's inconsistencies. He also objected to this evidence during the State's direct examination of the victim. The District Court overruled Scheffelman's objections. However, in doing so, it reminded the prosecutor that she might "back herself into a corner" if she made statements during her opening that could not be proven by admissible evidence. The assertion of facts in an opening statement which are not proved during trial may constitute grounds for a mistrial if there is a reasonable possibility that the inadmissible evidence contributed to the conviction. State v. West (1980), 190 Mont. 38, 42, 617 P.2d 1298, 1300.

During defendant's counsel's opening statement he stated the victim will tell a tale and that she lied to her grandmother and the pastor. During cross-examination of the victim, Scheffelman's attorney attempted to challenge her testimony. He also alluded to the possibility that the victim may have had a motive to fabricate

6

and implied she was subject to improper influence on the part of the prosecuting attorney. Following cross-examination the State was allowed to present testimony of the prior out of court statements made by the victim that were consistent with her testimony.

The defendant claims he does not assert a subsequent fabrication on the part of the victim, but that she was fabricating or lying all along. Generally speaking, if this were true, prior consistent statements would not be admitted. However, given the fact that the defense implied improper influence on the part of the prosecuting attorney in cross examining the victim, we hold that her prior consistent statements in this case were properly admitted. The statements made by the prosecutor during her opening statement could possibly have resulted in a mistrial if they could not be proven by the evidence. The prosecutor was warned of this possibility by the District Court. However, the door opened for the introduction of the victim's prior consistent statements by the defense's implication of improper influence by the prosecuting attorney. Once this was done, the State was free to introduce the out of court declarations through testimony provided by rebuttal witnesses.

Scheffelman next argues that the prior consistent statements should not have been allowed into evidence because they were made after the victim had a motive to falsify. At common law, prior consistent statements were normally excluded from evidence because they were viewed as irrelevant. It was recognized that the mere

fact that a declarant made the same statement on several occasions had no bearing on the veracity of that statement:

> Evidence which merely shows that the witness said the same thing on other occasions when his motive was the same does not have much probative force for the simple reason that mere repetition does not imply veracity.

See Weinstein and Berger, Weinstein's Evidence 801-105 to -151 (1988).

With the adoption of the new rules of evidence, however, it has been recognized that prior consistent statements are relevant to rebut a charge of fabrication, improper influence, or motive. Most jurisdictions still look to the time that the statement was made in order to address concerns of relevancy, however. These jurisdictions hold that in order to be relevant, a prior consistent statement must be made before the declarant has a motive to fabricate. If a declarant makes consistent statements after the motive to fabricate arises, the relevancy of those statements under Rules 402 and 403, M.R.Evid, is lost because they have no bearing upon truthfulness or veracity. See e.g. United States v. Miller, (9th Cir. 1989), 874 F.2d 1255, 1272; State v. Martin (Ariz. 1983), 663 P.2d 236; People v. Buckley (Ill. 1976), 356 N.E.2d 1112.

Other jurisdictions have taken different approaches when considering the admissibility of prior consistent statements. The State argues that this Court should adopt the approach taken by Colorado and New Mexico. These states have rejected the theory that Rule 801(d)(1)(B), M.R.Evid., imposes any time requirement as a prerequisite to admissibility of prior statements. These courts have held that "if the credibility of a witness is at issue, the

8

jury should have access to all the relevant facts including consistent and inconsistent statements and the reasons for possible fabrication." See e.g. People v. Andrews (Colo. 1986), 729 P.2d 997. Under this view, a jury would have access to all statements made by the declarant, together with evidence surrounding the timing and possible motives for fabrication of such statements. The jury would be able to assess the appropriate weight to be given the statements.

After considering each approach taken by the various jurisdictions, we believe that the most logical view is that held by the Ninth Circuit. As described above, this view requires the prior consistent statement to be made before any motive to fabricate has arisen. This view is most in line with the traditional common law and with common sense notions of relevancy. We now consider whether the prior consistent statements of this case were properly admitted under the guidelines set down by this rule.

According to Scheffelman, the victim's prior statements should not have been admitted because she had a motive to fabricate when they were made. However, according to the testimony, the victim's motive for fabrication was that she did not want Scheffelman to return to the family household and continue his pattern of abuse. This reason cannot be considered a motive to fabricate. Rather, it is inherently intertwined with the truth or falsity of the charge of the crime itself. It may provide the impetus to report the defendant's abuse, but it does not evidence any motive to lie

or fabricate. Therefore, we hold no error was committed in allowing the prior consistent statements into evidence.

## ISSUE II

Whether the District Court erred in admitting the testimony of Linda Crummet.

The State called Linda Crummet to testify as an expert in the area of child sexual abuse. Following testimony concerning her degrees, her licenses, the nature and extent of her practice and her position as a clinical social worker, the State moved to have Ms. Crummet recognized as an expert in the area of child sexual abuse due to both training and experience. Scheffelman objected to the State's motion; however, he did agree that she was qualified as an expert in the area of social work. The court granted the State's motion and allowed Ms. Crummet to testify as an expert in the area of child sexual abuse.

After Ms. Crummet was qualified, the State asked a number of questions that were designed to elicit testimony concerning the nature of the victim's experiences of sexual abuse. Ms. Crummet also gave her opinion that the victim's statements were truthful and that she was a victim of sexual abuse, which was subject to a continuing objection.

Under the preceding issue, we discussed the propriety of the District Court's decision to allow Ms. Crummet to testify under Rule 801(d)(1)(B), M.R.Evid. We held that under this rule, the court properly allowed Ms. Crummet, as well as other witnesses, to testify about prior statements made by the victim that were

10

consistent with her trial testimony. Ms. Crummet's testimony on factual components of the victim's testimony was properly admissible for the purpose of rehabilitating the victim's credibility, which had been attacked by the defense. However, Ms. Crummet could not render expert opinions under the authority of Rule 801, M.R.Evid. The admission of her opinions must, therefore, be justified by some other rule of law.

Montana follows the minority view that allows expert witnesses to testify directly about the credibility of a victim who testifies in a child sexual abuse trial. See State v. Geyman (1986), 224 Mont. 194, 729 P.2d 475. Such testimony is properly admissible when the child victim testifies and her credibility is attacked. See State v. Harris (Mont. 1991), 808 P.2d 453, 48 St.Rep. 62. However, in order to render such an opinion and like opinions, the expert must be properly qualified.

In the developing field of child sexual abuse law, the critical factors relating to qualification as an expert include: (1) extensive first hand experience with sexually abused and non-sexually abused children; (2) thorough and up to date knowledge of the professional literature on child sexual abuse; and (3) objectivity and neutrality about individual cases as are required of other experts. Meyers, Expert Testimony in Child Sexual Abuse Litigation, 68 Nebraska Law Rev. 1, 12 (1989). If these factors cannot be shown, the individual witness should not be allowed to testify as an expert on child sexual abuse. See Meyers, 68 Nebraska Law Rev. at 12.

In the case now before us, it is clear that Ms. Crummet did not meet the qualifications set out above that must necessarily be shown before she can give her opinion relative to the child being a victim of sexual abuse. We have fully read the transcript and there is no indication that Ms. Crummet has had experience in treating children who have not been sexually abused. She "specialized in working with sexual abuse victims." Without such experience her opinion on the particular issue of whether or not the victim had been sexually abused or showed symptoms and behavior consistent with child sexual abuse could not be properly given. Also, there is no indication that she utilized any controlled standard to arrive at this conclusion. See State v. Black (Me. 1988), 537 A.2d 1154.

Indeed many of the symptoms that the victim experienced were general disturbances that are often present in children who experience traumatic events other than sexual abuse. For example, when asked whether the victim had experienced characteristic symptoms of sexual abuse, Ms. Crummet affirmed that the victim had experienced a number of anxiety symptoms that commonly result from such abuse. In the victim's case, these symptoms included anxiety, having a hard time sitting still, having a hard time staying on a task and some sleep disturbance. It is true that such symptoms often result from sexual abuse; however; it is also true that children who have experienced disruptive events, such as separation from a parent, can experience elevations in these anxiety symptoms. See Meyers, 68 Nebraska Law Rev. 1, at 60-61.

In the victim's case, we note that during the period of time surrounding the onset of these symptoms, she had been subject to a number of anxiety producing events which included living in a alcoholic household and separation from her parents who were incarcerated in the Montana State Prison. In order to properly establish that the victim's symptoms of anxiety did not result from these disturbances, rather than from sexual abuse, the expert testifying on behalf of the State must have experience in treating both sexually and non-sexually abused children.

When Ms. Crummet was asked whether she had formed an opinion on whether or not the victim had been sexually abused, the defense objected on the grounds that she was not qualified to render such an opinion. This objection properly reserved this issue for appeal. As the above analysis indicates, Ms. Crummet was not qualified ". . . by knowledge, skill, experience, training or education . . ." to render this opinion. Rule 701, M.R.Evid. The above question asked of the expert and its answer are difficult to classify. Would the answer to the question be an opinion of fact or law? In order to avoid the opinion being one of law, or being inferred to be one of the law fitting the statutory crime, the expert should give an opinion such as that the child demonstrates age-inappropriate sexual knowledge and awareness; that the child's symptoms and behavior are consistent with child sexual abuse; and in the expert's opinion, no explanation or cause other than sexual abuse seems plausible.

We hold that the admission of Ms. Crummet's testimony on the

issue of whether S.S. was the victim of sexual abuse constituted reversible error.

Because this case will be reversed and remanded for a new trial, the only other issue we find it necessary to address is issue 5, whether Scheffelman should be allowed to review the victim's psychological records. During cross-examination of Lovyce Smith, Scheffelman's counsel learned that the victim had seen a psychologist prior to the time she reported any incident of sexual abuse. Apparently, neither the State nor Scheffelman had any knowledge of these counseling sessions. The purpose of these sessions was to provide counseling for problems that the victim may have experienced due to her mother's drug and alcohol abuse.

Following Scheffelman's request to view records of these counseling sessions, the District Court reviewed the records in camera. It then determined that they reflected the victim's participation in a group involving children of alcoholics and consisted primarily of reports of the staff psychologist's observations of the victim at play and during counseling. The trial court found that the reports would not be useful and they contained no exculpatory material.

Scheffelman argues that the exclusion of these reports, after it was revealed to the jury that the victim had received psychological counseling, may have left an impression that she received treatment for sexual abuse. However, Terri Herman, the victim's mother, clearly testified that the victim received counseling as a result of the mother's drug abuse. Therefore, we

fail to see how the record's exclusion would lead the jury to believe that these sessions were for sexual abuse.

Additionally, Scheffelman maintains that he should have been able to utilize the records to show absence of rape trauma syndrome. He argues that if the records contained no reference to the symptoms of this syndrome, he could use this as evidence that no abuse occurred. We reject this argument. The absence of evidence of psychological trauma logically does not prove that the offense did not occur. State v. Gilpin (1988), 232 Mont. 56, 756 P.2d 445. The District Court held that these records contained no evidence applicable to Scheffelman's trial. We find no abuse of discretion in this ruling. However, if a qualified expert for the State is anticipated to testify that certain symptoms and behavior of the victim are consistent with sexual abuse, the defense, upon proper motion, should be allowed to examine such pertinent records after examination in camera by the court, if such records show or tend to show other reasons for such symptoms and behavior. As to issues 3, 4, 7 and 8, they need not be addressed because of the retrial. As to issue 6, relative to the court's instructing the jury, no error was committed.

Reversed and remanded for retrial.

_____
Justice

We Concur:

_____
Chief Justice

_____

15

*William E. Hunstle*

*Karla M. Gray*

_____

_____

Justices

Justice Terry N. Trieweiler concurring in part and dissenting in part.

I concur with the majority's conclusions that the victim's prior consistent statements were admissible under Rule 801(d)(1)(B), M.R.Evid., and that the District Court did not abuse its discretion when it refused to permit inspection of the victim's psychological records. However, I do not agree with all that is said in the majority's discussion of prior consistent statements.

I dissent from that part of the majority's opinion which holds that the testimony of Linda Crummett was inadmissible and reverses the defendant's conviction on that basis.

The State of Montana, the County Attorney, and the District Court had a right to rely on this Court's prior decisions in *State v. French* (1988), 233 Mont. 364, 760 P.2d 86, and *State v. Geyman* (1986), 224 Mont. 194, 729 P.2d 475, when they offered and admitted the testimony of Ms. Crummett.

In *French*, we held that a school counselor with a master's degree in counseling and a bachelor's degree in education who had counseled a young victim of sexual abuse was qualified to testify that in her opinion the victim had been truthful when she described the defendant's abusive acts to her. There were no foundational requirements established by that case for such testimony and the rules of evidence are purposely liberal regarding the necessary

17

qualifications for expert testimony. *See* Rules 701, 702, 703, and 704, M.R.Evid.

In this case, the State went to greater lengths to qualify Ms. Crummett than was done with the expert who testified in *French*. It established that she is a clinical social worker with a master's degree in social work who specializes in working with sexual abuse victims. At the time of trial, she had been a specialist in that field for a period of from eight to nine years and had counseled over 1000 children who had been victims of sexual abuse.

Ms. Crummett had attended as many as 30 classes which dealt with the subject of recognizing victims of sexual abuse and during many of those courses was instructed on techniques for evaluating the credibility of children who claimed to be victims. She was certified by the National Association of Social Workers and licensed as a social worker by the State of Montana. She was employed as a clinical social worker by Eastern Montana College, in addition to engaging in private practice.

In fact, the defendant in this case stipulated to Ms. Crummett's expertise in the area of social work, and the District Court found, without objection, that she was qualified as an expert in the area of child sexual abuse.

When Ms. Crummett was asked for her opinions regarding the victim's credibility, defendant objected for two reasons. He stated that the question called for her to express an opinion which

invaded the province of the jury. However, that issue had clearly been resolved by our previous decisions in *French* and *Geyman*. He also objected that her testimony included hearsay statements made by the victim. However, that issue was addressed by the majority under its discussion of prior consistent statements. For these reasons, Ms. Crummett was permitted by the District Court to express her opinions regarding the victim's credibility.

Interestingly, on appeal defendant raised no objection to Ms. Crummett's qualifications for expressing the opinions that she expressed. Defendant's argument was limited to his claim that Ms. Crummett was improperly allowed to relate the victim's prior statements.

Based on the aforementioned foundation, Ms. Crummett related what characteristics she has been trained to look for in evaluating an alleged victim's complaints of sexual abuse and testified that she found several of those characteristics in this victim. She expressed the opinion that, based upon her experience in the ten interviews that she had with the victim, the victim had been abused and the description of that abuse related to her by the victim was truthful. At no time during any of her testimony did defendant raise the objections which now form the basis for the majority's reversal of defendant's conviction.

The District Court had no opportunity to consider those objections before allowing Ms. Crummett's testimony and the

prosecutor had no opportunity to consider the majority's analysis before she decided to offer Ms. Crummett's testimony.

I question the significance of the new foundational requirements imposed by the majority. However, of greater concern is my belief that all trial lawyers, whether representing the State or private individuals, have a right to know the rules for foundationing expert testimony in advance. If this Court wants to change the rules, then it should do so prospectively.

In this case, the State followed all the rules that it was aware of at the time of trial and still finds its hard-earned conviction of defendant overturned due to another "mid-course correction" by this Court.

Furthermore, I disagree with the majority's analysis of Ms. Crummett's testimony on the basis of an article in the Nebraska Law Review. Ms. Crummett observed symptoms in the victim's behavior which were consistent with victimization by defendant. The majority observes that these symptoms are consistent with other "anxiety producing events" which were present in the victim's life. However, those observations are more appropriate for cross-examination than as a basis for excluding her opinion as a matter of law. In this case, Ms. Crummett was thoroughly cross-examined regarding other possible causes for the victim's symptoms. However, after having had the benefit of that cross-examination and the benefit of personally observing the

witness, the jury concluded that she properly attributed those symptoms to sexual abuse.

The argument that this victim's symptoms may have been attributable to some cause other than sexual abuse was appropriate in the District Court. It is not a proper basis for reversal of the jury's verdict.

For these reasons, I would conclude that in offering the testimony of Linda Crummett the State satisfied all foundational requirements of which it had previously been apprised, and would affirm the judgment of the District Court.

_____
Justice

Justice Fred J. Weber dissents as follows:

I dissent from Issue II of the majority opinion where the majority concludes that the District Court erred in admitting the testimony of Linda Crummet. In quoting from Meyers, 68 Nebraska Law Rev. 1, 12 (1989), the majority points out that in the developing field of child sexual abuse, the critical factors relating to qualification as an expert include: (1) extensive first hand experience with sexually abused and non-sexually abused children; (2) thorough and up to date knowledge of the professional literature on child sexual abuse; and (3) objectivity and neutrality about individual cases as are required of other experts. The majority opinion raises no issue as to Linda Crummet's extensive first-hand experience with sexually abused children, her thorough and up to date knowledge of professional literature and her objectivity and neutrality. The majority does conclude that there is no indication that Ms. Crummet has had experience in treating non-sexually abused children; and without such experience, her opinion on the issue of whether or not the victim had been sexually abused could not properly be given. To me the record requires a different conclusion. Following are parts of the qualifying testimony on the part of Linda Crummet:

Q. Would you state your name, please.
A. Linda Crummett.
Q. And your occupation.
A. I am clinical social worker.
Q. Where do you work, Ms. Crummett?
A. I work twenty hours a week at Eastern Montana College as a counselor at the Health Center, and I have a private practice.
Q. Would you tell the jury, please, what your educational background is.

22

A.    I have a Masters in social work from the University of Minnesota.

Q.    Is there any area in which you specialize in your practice?

A.    I specialize in working with sexual abuse victims.

. . .

Q.    . . . Were there any courses that involved dealing with and recognizing the victims of sexual abuse?

A.    Many.    Many in graduate school and then subsequently in specialized workshop and training.

Q.    All right.    When would the specialized workshops have taken place, were they before or after you received your masters degree?

A.    After I received my masters degree, and off and on since 1981 and I continue to do so.

Q.    Can you tell the jury within a fair number the workshops you have attended since you obtained your degree.

A.    Oh I would say thirty, forty at least.

Q.    And how many of those workshops would have dealt with sexual abuse of children?

A.    The majority, probably eighty percent.

. . .

This establishes without contradiction that Linda Crummet, over the past ten years, had taken many courses involving the recognition and identifcation of victims of sexual abuse.    This was done in approximately thirty specialized workshops over the span of ten years.    This directly contradicts the majority conclusion that she had no basis for concluding that a victim had been sexually abused. The uncontradicted record establishes that she had extensive workshops and training for the express purpose of identifying and concluding that a particular person had been or had not been a sexual abuse victim.    The foregoing testimony together with other testimony on the part of Linda Crummet established that at Eastern Montana College where she works twenty hours a week, approximately forty to fifty percent of her cases are not sexual abuse cases.    In her private practice about ten percent are not sexual abuse cases.

23

The District Court in the exercise of its discretion concluded that Linda Crummet was qualified as an expert "by knowledge, skill, experience, training or education, and may testify as an expert in this area of child sexual abuse." There is certainly substantial evidence for that District Court conclusion and I am unable to see on what basis the majority has in effect concluded that the District Court was clearly erroneous in reaching that conclusion.

We will next discuss additional pertinent information disclosed by the examination and cross-examination of Linda Crummet. Following cross-examination on the question of her ability to determine when a child, sexually abused or not, might be lying she gave the following response:

> Q. I would like to go into that a little bit farther. What type of training have you had to deal with making a distinction between a child who is lying and a child who is actually a victim of sexual abuse?
> A. Well that's a focus of much of the training as far as workshops that have to do with determining whether a child is credible and determining whether a child is telling the truth versus telling a lie, how to do that. Interviewing workshops, how to interview children. And there are always a lot of questions and confusion about what legal issues versus treatment issues sometimes can clash. And so much of that has been covered in many treatment workshops, supervision, I have had a great deal of supervision in cases in working with kids.

With regard to the statements made by S.S. as compared to statements which might be a lie, she testified as follows:

> Q. Let me just stop you a minute here. With regard to the authenticity then, how did that apply to your stated conclusion that you believed the statements [S.S.] made to you were true?
> A. Well [S.S.] would essentially give the same information over time but was able to give, use different words and she was consistent with her affect without it appearing staged or unreal.
> Q. Now affect you have indicated is difficulty

24

saying words, hesitation, embarrassment?

A. Emotional kinds of response, yes, and hers was pretty appropriate to the content.

Q. And with a child who is making up the story what affect do you see?

A. They can be agitated or flat, meaning they just kind of get the words and don't have a lot of fear or concern or the kinds of icky feeling that a child shows, and you can see when a child feels real dirty, when they feel responsible, when they feel scared.

Q. You also indicated that there have been a number of cases you have dealt with where you did conclude the child was lying?

A. Yes.

Such testimony demonstrated that Linda Crummet could distinguish between a child who is lying about being a victim of sexual abuse and an actual sexual abuse victim. She also demonstrated an ability to distinguish coached children and lying children from those telling the truth about sexual abuse. She explained some of the characteristics which helped her to distinguish the truth. From that testimony we may properly conclude that she had significant experience in treating abused and non-abused children, and had extensive training and experience in determining whether or not a child was telling the truth in connection with claims of sexual abuse. After considering this extensive testimony which goes beyond the initial qualifying testimony, I disagree even more emphatically with the majority conclusion that Linda Crummet did not have experience in treating non-sexually abused children so that her opinion could not be given.

I also emphasize that the defense counsel did not raise an issue as to the lack of experience of Linda Crummet with non-sexually abused children. Had such an objection been raised, it

25

would have given an additional opportunity for presentation of additional evidence and consideration of the same by the trial court.

I conclude the record amply demonstrates that Linda Crummet had experience in treating both sexually abused and non-sexually abused children. I conclude that Linda Crummet had the qualifications by knowledge, skill, experience, training or education to render an expert opinion as required under Rule 701, M.R.Evid.

I would affirm the conviction of the defendant.

_____
Justice

26