**STATE of Minnesota, Respondent,**

v.

**Joseph Michael McGEE, Appellant.**

**No. 81–547.**

Supreme Court of Minnesota.

Aug. 31, 1982.

Thomas M. Kelly, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Gary Hansen and Norman B. Coleman, Jr., Sp. Asst. Attys. Gen., St. Paul, John W. Riches II, County Atty., Benson, for respondent.

OTIS, Justice.

This is an appeal from a conviction for criminal sexual conduct in the third degree in violation of Minn. Stat. § 609.344(c) (1980). We reverse.

By way of rebutting appellant's claim that the complainant consented to sexual intercourse, the state introduced the expert testimony of a physician which included a description of the so-called "rape trauma syndrome."

The doctor was permitted to render his opinion that complainant's behavior, subsequent to the sexual encounter, consisting of anxiety, nightmares, trouble sleeping and trouble concentrating, and fear of being followed, were symptoms consistent with rape trauma syndrome.

We hold that the introduction of this evidence was fundamental error and sufficiently prejudicial to require a new trial for the reasons set forth in *State v. Saldana,* 324 N.W.2d 227 (Minn.1982).

Reversed and remanded.

WAHL, Justice (dissenting).

I respectfully dissent. In the context of this case, expert testimony identifying complainant's behavior after the alleged sexual assault as consistent with "rape trauma syndrome" was properly admitted into evidence.

Dr. James Springrose, who examined the complainant immediately after the incident and on two later occasions, testified for the prosecution as an expert witness. His qualifications include a pre-medical degree from Notre Dame, a medical degree from Minnesota, and a residency at North Memorial Hospital, where he had occasion to examine rape victims. While he qualifies as an expert, at issue is his testimony concerning rape trauma syndrome. Rape trauma syndrome, as recently noted by the Montana Supreme Court in *State v. Mackie,* 622 P.2d 673 (Mont. 1981), is a "medical term for the disorientation and shock experienced by rape victims following a rape assault." *Id.* at 675. It is "the acute phase and long term reorganization process that occurs as a result of forcible rape or attempted forcible rape." A. Burgess and L. Holmstrom, *Rape Trauma Syndrome,* 131 American Journal of Psychiatry 981 (September 1974). The admissibility of this evidence in a rape prosecution is a question of first impression before this court in this case and in *State v. Saldana* decided today.

It should be noted at the outset that not only did defense counsel first raise the issue of rape trauma syndrome during his cross-examination of Dr. Springrose, he also failed to specifically object to Dr. Springrose's further testimony by the prosecution. Assuming, however, that the issue is properly before us, expert testimony concerning rape trauma syndrome must meet certain requirements to be admissible. First, evidence of rape trauma syndrome must be accepted as reliable within the medical community.[1] Second, the evidence must meet

1. My research leads me to conclude that a substantial data base supports the existence of rape trauma syndrome. The state had directed our attention to a recent decision of the Pennsylvania Supreme Court, *In the Matter of Pittsburgh Action Against Rape,* 494 Pa. 15, 428

**234**

the requirements of Minn. R. Evid. 702, which provides for the admission of expert testimony if (1) the expert is qualified by way of education or experience, (2) the subject matter of the expert testimony is not within the common knowledge of the jury, and (3) the expert testimony will be helpful to the jury. The decision concerning the admissibility has traditionally rested in the discretion of the trial court. *See* Committee Comment to Minn. R. Evid. 702.

In this case Dr. Springrose qualifies as an expert with specific experience with rape victims. In addition, the subject matter of his expert testimony concerning rape trauma syndrome or the psychological aftershock commonly experienced by rape victims is not within the common knowledge of the jury. The crucial question, then, is whether expert testimony concerning rape trauma syndrome is helpful to the jury.

Dr. Springrose did not testify, as did the expert witness in *Saldana,* as to whether, in his opinion, the rape actually occurred. Rather, he discussed some of the complainant's psychological symptoms after the alleged rape and stated that he found these symptoms to be consistent with rape trauma syndrome. Such evidence is probative on the issue of consent and thus helpful to the jury in resolving the conflicting facts of this case concerning that issue.

Evidence of rape trauma syndrome is clearly distinguishable from the "battering parent syndrome," which we have proscribed because the latter constitutes a direct attack on the character of the defendant. As the state has noted, testimony concerning rape trauma does not penalize a defendant for past misconduct but rather focuses on the victim and allows a defendant to inquire into psychological and emotional problems experienced by a victim prior to an attack. Like the "battered child syndrome," which we have specifically approved in *State v. Loebach,* 310 N.W.2d 58

(Minn. 1981); *State v. Goblirsch,* 309 Minn. 401, 246 N.W.2d 12 (1976); and *State v. Loss,* 295 Minn. 271, 204 N.W.2d 404 (1973), rape trauma evidence is victim-oriented, explains victim injuries and is nonprejudicial to the character of the defendant.

The probative value of expert testimony does not appear to be "substantially outweighed by the danger of unfair prejudice," Minn. R. Evid. 403. Indeed, in this case, defense counsel was able on cross-examination to elicit testimony from Dr. Springrose that the complainant's symptoms suggesting rape trauma syndrome could have been caused by events in her life prior to the alleged rape. Thus, Dr. Springrose's testimony did not amount to "unwarranted reinforcement of [complainant's] testimony" and did not give a "stamp of scientific legitimacy to the truth [of complainant's] factual testimony concerning the rape." *People v. Izzo,* 282 N.W.2d 10, 11, 90 Mich. App. 727, 730 (1979).

The trial court did not commit reversible error in admitting evidence of rape trauma syndrome. Such evidence, limited as it is in this case and subject to cross-examination, is properly admissible under Minn. R. Evid. 702.

I would affirm the judgment of conviction on all issues presented by the appeal.

PETERSON, Justice (dissenting):

I join in the dissenting opinion of Justice Wahl.

A.2d 126 (1981), noting the dissent of Justice Larsen at 138–40 and authority cited therein. Justice Larsen makes reference to rape trauma syndrome and cites to A. Burgess and L. Holmstrom, *Rape: Crises and Recovery* 33–47 (1979). This and other studies by Burgess and Holmstrom on rape trauma are cited in a more recent study of rape, Ruch, Chandler and Harter, *Life Change and Rape Impact,* 21 Journal of Health and Social Behavior, 248–60 (Sept. 1980).