STATE of Minnesota,
Petitioner, Appellant,

v.

Mark Steven HALL, Respondent.

No. CX–86–374.

Supreme Court of Minnesota.

May 29, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis Co. Atty., James P. Florey, Asst. Co. Atty., Virginia, for appellant.

Mark C. Weir, Virginia, for respondent.

AMDAHL, Chief Justice.

On October 25, 1985, a jury found respondent Mark Steven Hall guilty of criminal sexual conduct in the first degree, Minn.Stat. § 609.342(b) (1984); Hall was sentenced to a 43–month term of imprisonment. The Court of Appeals reversed Hall's conviction and remanded for a new trial on the ground that the trial court committed reversible error by admitting expert testimony concerning the common behavioral characteristics of sexually abused adolescents. *State v. Hall*, 392 N.W.2d 285 (Minn.App.1986). We granted the state's petition for further review to determine whether, under the facts of this case, the admission of such expert testimony was reversible error. We reverse and reinstate the judgment of conviction.

On June 28, 1985, Hall sexually assaulted the complainant; at that time, the complainant was 14 years old and Hall was 30

years old. On the day of the assault, the complainant was babysitting for the Halls, as she had been doing on an almost daily basis for the prior month. Around 8 p.m. that evening, Mark Hall came home and put his children to bed; meanwhile, the complainant, expecting that Hall would take her home, collected her purse and shoes and sat on a couch. After Hall had put his children to bed, he came into the living room where the complainant was seated, grabbed her around the wrists, and took her into his bedroom. As he was taking the complainant into the bedroom, Hall told her to be quiet or he would kill her. Once inside the bedroom, Hall sexually assaulted the complainant; the sexual assault included an act of sexual penetration. Either during or immediately after the assault, Hall told the complainant that if she told anyone about the incident, he had 46 acres behind his house and her body would never be found. Hall then took the complainant home; she did not immediately report the assault.

The testimony at trial indicates that during the weeks following the assault, the complainant told some of her friends about the assault; however, none of these people nor the complainant reported the assault to the police. Also, in the weeks following the assault, the complainant continued to babysit for the Halls.

About 1 month after the assault, the complainant was again babysitting for the Halls. During the evening, Hall returned home with two friends. Prior to their leaving, Hall said something to the complainant which made her fear that she might be assaulted again. Shortly after Hall and his friends had left, the complainant called her sister and told her about the earlier assault and her fear of being assaulted again. The complainant's sister picked up the complainant and drove her home. The police were then notified.

At trial, the complainant testified that she did not immediately report the June 28 assault because she was scared and thought that Hall meant what he said about killing her. She also testified that she continued to babysit for the Halls be-

cause she was afraid that if she stopped, Hall would think she had told someone about the assault.

Mark Hall testified at trial. He denied sexually assaulting the complainant, and he claimed that on the evening of June 28, 1985, from 8 p.m. until 9:30 p.m., he had been at the restaurant where his wife was working. Hall's wife also testified that Hall was at the restaurant that night from 8 until 9:30. Another employee of the restaurant also testified that she remembered seeing Hall in the restaurant at around 8:30 p.m. on June 28.

The concern in this case is directed toward the testimony of Dr. Clare Bell, a clinical psychologist at the Range Mental Health Center. Over defense objection, the trial court allowed Dr. Bell, an expert in the area of sexual abuse, to testify. Dr. Bell testified that experts are able to identify behavioral characteristics commonly exhibited by sexually abused adolescents. Dr. Bell testified that one of the characteristics displayed by an adolescent sexual abuse victim is a delay in reporting; the principal reason for the delay, she stated, is the victim's fear of being harmed. Dr. Bell also testified that when the victim knows the assailant, it is not uncommon for the victim to have continued contact with the assailant; one of the reasons for the continued contact, stated Dr. Bell, is the victim's fear of retaliation if she avoids the assailant.

The main issue is whether the trial court committed reversible error by admitting the testimony of Dr. Bell. We hold that under the facts of this case, the trial court's admission of this testimony did not constitute an abuse of discretion.

The admissibility of expert testimony concerning the characteristics typically displayed by victims of sexual assault has been addressed by this court on three previous occasions. In *State v. Saldana*, 324 N.W.2d 227 (Minn.1982), and its companion case, *State v. McGee*, 324 N.W.2d 232 (Minn.1982), we held that the admission of such testimony was error. In both *Saldana* and *McGee*, the victim of the sexual assault was an adult, and the expert in

each case discussed the stages a rape victim typically goes through, *i.e.*, explained "Rape trauma syndrome." We reversed the convictions in both cases, holding that it was reversible error to allow an expert to testify about the characteristics typically displayed by sexual assault victims and to give an opinion either that the complainant had been raped (*Saldana*) or that the complainant's behavior after the assault was consistent with rape trauma syndrome (*McGee*).

In *State v. Myers*, 359 N.W.2d 604 (Minn. 1984), we held that it is within the trial court's discretion to admit expert testimony describing the traits and characteristics typically observed in sexually abused children. In *Myers*, the victim was 7 years old. The expert was allowed to give an opinion that the complainant's allegations were truthful; we allowed this testimony not because the complainant was a child, but because the defendant had opened the door to this opinion testimony. In fact, we commented that as a general rule, "we would reject expert opinion testimony regarding the truth or falsity of a witness' allegations about a crime * * *." *Myers*, 359 N.W.2d at 611.

This case, in terms of the age of the complainant, falls between *Saldana* and *Myers;* here the complainant, at the time of the assault and at trial, was a 14–year–old adolescent—neither an adult as in *Saldana,* nor a child as in *Myers*. This case is also different from *Saldana* and *Myers* in that the testimony of Dr. Bell was limited in scope. Dr. Bell did identify several specific characteristics commonly exhibited by adolescent victims of sexual assault who are abused outside the family context but by someone they knew; however, the focus of her testimony was that when the victim is an adolescent, neither a delay in reporting nor continued contact with the assailant

is unusual. Dr. Bell had not examined the complainant, so she did not attempt to describe the characteristics or conditions observed in or exhibited by the complainant.

 The admissibility of expert testimony lies within the sound discretion of the trial court. *State v. Helterbridle*, 301 N.W.2d 545, 547 (Minn.1980). In determining whether expert testimony should be admitted, the basic consideration is whether it will be helpful to the jury.[1] Minn.R. Evid. 702; *Helterbridle*, 301 N.W.2d at 547. The trial court must also remain cognizant that even if expert testimony is helpful, its probative value must be balanced against the danger of unfair prejudice, confusion, or misleading the jury, and if its probative value is substantially outweighed by any of these considerations, it may be excluded. Minn.R.Evid. 403.

 Our review of the record leads us to conclude that the trial court did not abuse its discretion by admitting the testimony of Dr. Bell concerning the behavioral characteristics typically displayed by adolescent victims of sexual assault. While we hold that in cases where a sexual assault victim is an adolescent, expert testimony as to the reporting conduct of such victims and as to continued contact by the adolescent with the assailant is admissible in the proper exercise of discretion by the trial court, we caution that we do not intend to establish a categorical rule that expert testimony concerning all characteristics typically displayed by adolescent sexual assault victims is admissible.

 In addition to challenging the admissibility of Dr. Bell's testimony, Hall argues that there was insufficient evidence to support the jury verdict. Specifically, he argues that there was insufficient evidence for the jury to find either that he was in a

1. In assessing the helpfulness of expert testimony concerning the characteristics typically displayed by victims of sexual assault, a recent study and a recent article may prove informative. The study was completed by Patricia Frazier and Eugene Borgida of the University of Minnesota and is titled "Juror Common Understanding and the Admissibility of Rape Trauma Syndrome Evidence in Court," and was present-

ed at the 94th Annual Convention of the American Psychological Association at Washington, D.C., August 1986. The article was written by David McCord and is titled "Expert Psychological Testimony About Child Complainants in Sexual Abuse Prosecutions: A Foray Into the Admissibility of Novel Psychological Evidence." 77 J.Crim.L. & Criminology 1 (1986).

"position of authority" over the complainant, or that he used "this authority to cause the complainant to submit." Minn. Stat. § 609.343(b) (1984). We find this argument meritless. Our examination of the record satisfies us that the evidence of Hall's guilt was sufficient to sustain the guilty verdict.

Reversed; judgment of conviction reinstated.

WAHL, Justice, (concurring specially).

The court is properly holding that in cases where a sexual assault victim is an adolescent, expert testimony as to the reporting conduct of such victims and as to continued contact by the adolescent with the assailant is admissible in the proper exercise of discretion by the trial court. I write only to emphasize that our language in *State v. Myers*, 359 N.W.2d 604 (Minn. 1984), while applying specifically to a seven-year-old child in that case, generally addressed the issue of whether the emotional and psychological characteristics observed in sexually abused children is a proper subject of expert testimony. There we determined that "[b]ackground data providing a relevant insight into the puzzling aspects of the child's conduct and demeanor which the jury could not otherwise bring to its evaluation of her credibility is helpful and appropriate in cases of sexual abuse of children * * *." *Myers*, 359 N.W.2d at 610. If it is helpful for the jury to have such background data in the case of a seven-year-old child, it is even more important, in the face of medical testimony that the 14–year–old in this case was "functionally and physiologically" an adult woman, for the jury to have the specialized knowledge given by Dr. Bell that an adolescent victim of sexual abuse will react quite differently than will an adult and will have characteristics which overlap those of younger age groups. Particularly this jury needed the specialized information that it is not uncommon for a young adolescent victim of sexual abuse or sexual assault to delay reporting or to place herself or himself back in the presence of the perpetrator after the initial assault and the reasons for such behavior.

COYNE, Justice (concurring specially).

I join in the special concurrence of Justice Wahl.