*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1397**

State of Minnesota,
Respondent,

vs.

Nathan Charles Robert Schwartz,
Appellant.

**Filed September 28, 2015
Affirmed
Peterson, Judge**

Meeker County District Court
File No. 47-CR-12-1021

Lori Swanson, Attorney General, Michael T. Everson, Assistant Attorney General, St. Paul, Minnesota; and

Anthony D. Spector, Meeker County Attorney, Litchfield, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer K. Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Stauber, Judge; and Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**PETERSON**, Judge

In this appeal from convictions of second-degree criminal sexual conduct, use of a minor in a sexual performance or pornographic work, and possession of a pornographic

work, appellant argues that the evidence was insufficient to prove him guilty of possession of a pornographic work, and the district court abused its discretion by (1) admitting *Spreigl* evidence, (2) admitting expert testimony; and (3) imposing "consecutive" fines. We affirm.

## FACTS

In September 2012, 13-year-old O.S. reported that appellant Nathan Charles Robert Schwartz, her adult brother, had been repeatedly sexually abusing her since she was about three years old. O.S. reported that Schwartz would touch her "over her clothing and on her bare vagina, breasts and butt . . . using his hand," penetrated her with his hand, asked her to "touch his naked penis," "brib[ed] her to do what he asked sexually," and took photographs and videos of her while she was either naked or wearing only underwear. Schwartz's computer was seized from his bedroom during a search of his parents' home. A search of the contents of the computer revealed several photographs and videos of O.S. either naked or wearing only a pair of underwear. The search of the computer further revealed numerous other pornographic images, some of which were images of children. Schwartz was charged with three counts of first-degree criminal sexual conduct, three counts of second-degree criminal sexual conduct, five counts of use of a minor in a sexual performance or pornographic work, and 42 counts of possession of a pornographic work.

Before trial, the state notified Schwartz that it intended to introduce evidence that Schwartz (1) was previously adjudicated a juvenile delinquent; and (2) previously sexually abused four juvenile female relatives, including O.S., another sister, E.S., and a

2

niece, B.N. The state asserted that this evidence demonstrated that Schwartz had a common scheme or plan of sexually abusing juvenile female relatives in his home. The district court determined that the evidence was admissible to show a common scheme or plan and to rebut Schwartz's defense that O.S. fabricated her allegations of sexual abuse.

Schwartz waived his right to a jury trial, and the charges were tried to the court in a three-day trial. One of the witnesses called by the state was Investigator Dan Lang of the Meeker County Sheriff's Office. The district court permitted Lang to testify on rebuttal, over defense counsel's objection as to foundation, that juveniles who experience sexual abuse commonly delay reporting the abuse for months or years. Following the trial, the district court convicted Schwartz of three counts of second-degree criminal sexual conduct, five counts of use of a minor in a sexual performance or pornographic work, and 15 counts of possession of a pornographic work. Schwartz moved for a judgment of acquittal or a new trial based on insufficient evidence and trial errors; his motion was denied.

At sentencing, the district court imposed consecutive terms of imprisonment for one conviction of second-degree criminal sexual conduct, one conviction of use of a minor in a sexual performance or pornographic work, and one conviction of possession of a pornographic work. No sentences were imposed for two convictions of second-degree criminal sexual conduct, and terms of imprisonment for the remaining convictions were imposed to run concurrently. The district also ordered Schwartz to pay $900 in fines.

## DECISION

## I.

Schwartz was convicted of 15 counts of possession of a pornographic work, in violation of Minn. Stat. § 617.247, subd. 4(a) (2012). It is a felony for a person to "possess[] a pornographic work or a computer disk or computer or other electronic, magnetic, or optical storage system or a storage system of any other type, containing a pornographic work, *knowing or with reason to know its content and character*." Minn. Stat. § 617.247, subd. 4(a) (emphasis added); *see also* Minn. Stat. § 617.246, subd. 1(f) (2012) (defining "pornographic work" to include only depictions of sexual performance or sexual conduct involving a minor). Schwartz argues that the evidence presented at trial was insufficient to prove that he had the mens rea for these 15 offenses.

When evaluating a challenge to the sufficiency of the evidence, the same standard of review is applied following a court trial as is applied following a jury trial. *State v. Palmer*, 803 N.W.2d 727, 733 (Minn. 2011). Assessing the sufficiency of the evidence involves "a painstaking review of the record to determine whether the evidence and reasonable inferences drawn therefrom . . . were sufficient to allow the [fact-finder] to reach its verdict." *State v. Vang*, 847 N.W.2d 248, 258 (Minn. 2014) (quotation omitted). A guilty verdict will not be reversed if, "giving due regard to the presumption of innocence and to the prosecution's burden of proving guilt beyond a reasonable doubt, the [fact-finder] could reasonably have found the defendant guilty of the charged offense." *Id.* (quotation omitted). The appellate court must "view the evidence in the light most favorable to the verdict and assume that the fact finder believed the state's

4

witnesses and disbelieved any contrary evidence." *Gulbertson v. State*, 843 N.W.2d 240, 245 (Minn. 2014) (quotation omitted).

A defendant's state of mind is "generally proved circumstantially--by drawing inferences from the defendant's words and actions in light of the totality of the circumstances." *State v. Clark*, 739 N.W.2d 412, 422 (Minn. 2007) (quotation omitted). Heightened scrutiny is applied when the sufficiency of the circumstantial evidence proving state of mind is challenged, even if the other elements of the offense were proved through direct evidence. *See State v. Al-Naseer*, 788 N.W.2d 469, 474-75 (Minn. 2010). The sufficiency of circumstantial evidence is reviewed using a two-step analysis. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). First, the appellate court identifies the circumstances proved by the evidence, "consider[ing] only those circumstances that are consistent with the verdict." *Id.* at 598-99 (stating that the fact-finder is in the best position to evaluate the credibility of circumstantial evidence and that "we defer to the [fact-finder's] acceptance of the proof of these circumstances and rejection of evidence in the record that conflict[s] with the circumstances proved" (quotations omitted)). Second, the appellate court "determine[s] whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* at 599 (quotations omitted) (stating that the reasonableness of all inferences is examined independently, with no deference given to the fact-finder's choice between reasonable inferences). "Circumstantial evidence must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a

reasonable doubt any reasonable inference other than guilt." *State v. Pratt*, 813 N.W.2d 868, 874 (Minn. 2012) (quotations omitted).

The mens rea requirement in section 617.247, subdivision 4(a), applies to the defendant's knowledge that he possessed a work and to the defendant's knowledge that the work was pornographic and involved a minor. *State v. McCauley*, 820 N.W.2d 577, 585-86 (Minn. App. 2012) ("We cannot logically separate this mens rea requirement for the content and character of a work from the actual possession of the work. A person cannot 'have reason to know' a work's content or character unless he actually knows he possesses the work. . . . [T]he statutory mens rea required for knowledge of a work's content and character logically applies to the actual possession of the work as well."), *review denied* (Minn. Oct. 24, 2012). The phrase "reason to know" as used in section 617.247, subdivision 4(a), means that "the possessor is subjectively aware of a 'substantial and unjustifiable risk.'" *State v. Mauer*, 741 N.W.2d 107, 115 (Minn. 2007).

The circumstances consistent with the verdict that were proved by the evidence presented at trial include that the works of pornography were discovered on Schwartz's computer, which was password protected. The computer was located in Schwartz's basement bedroom, which he did not share, and the door to the bedroom had a lock and an alarm. Analysis of the computer revealed that internet searches were run for terms such as "preteen" and "PTHC," which is "a common acronym" for "pre-teen hardcore," and that websites associated with child pornography were visited. The pornographic works were downloaded from the internet onto the computer and later "deleted," but could be recovered on the computer. Schwartz reformatted the computer's hard drive in

August 2012 after he attempted to download an adult video, and this reformatting "wipe[d] out all data on the hard drive" so that there was "absolutely nothing on the drive." The works of pornography discovered on the computer were downloaded after this reformatting but before the computer was seized on September 6, 2012.

The district court found that Schwartz "knowingly possessed videos and still photographic images of minor females that depict 'sexual conduct' . . . [and] constitut[e] a pornographic work." Schwartz argues that another reasonable inference is that he may not have known that the pornographic works were downloaded onto his computer or that the works involved minors. He first contends that the pornographic works could have been downloaded unintentionally when legal adult content was accessed. *Cf. State v. Myrland*, 681 N.W.2d 415, 420 (Minn. App. 2004) (determining that the evidence was insufficient to prove that the defendant possessed pornographic works where testimony indicated that there are a number of ways that images can come to be stored on a computer), *review denied* (Minn. Aug. 25, 2004).

According to the trial testimony, more than 14,000 works of "questionable contraband content" were discovered on Schwartz's computer, and it could not be determined whether the pornographic works were actually viewed. The trial testimony indicated that it is "unlikely, but possible" for images to be unintentionally downloaded onto a computer when an adult website is visited. But Schwartz's theory is contradicted by the evidence that searches for the terms preteen and PTHC had been run on the computer.

Schwartz also suggests that O.S. may have accessed his computer and downloaded the pornographic works. *Cf. id.* (determining that the evidence was insufficient to prove that the defendant possessed pornographic works when many other people had access to the computers at issue). But the computer was password protected and was located in Schwartz's bedroom, which had a door with a lock and an alarm. And the district court noted that there was no credible evidence indicating that O.S. was knowledgeable about computers or had technical skills. The only reasonable inference from the evidence is that Schwartz knew or had reason to know that he possessed the works and that the works were pornographic and involved minors.

## II.

Schwartz argues that the district court abused its discretion by admitting prejudicial *Spreigl* evidence. *See State v. Campbell*, 861 N.W.2d 95, 102 (Minn. 2015) (explaining that evidence of other crimes, wrongs, or acts is commonly known as *Spreigl* evidence and citing *State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965)). A district court's decision to admit *Spreigl* evidence is reviewed for an abuse of discretion. *Id.* To be entitled to a new trial, the defendant must show that the district court erred by admitting the evidence and that the error was prejudicial. *State v. Rossberg*, 851 N.W.2d 609, 615 (Minn. 2014).

> Evidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

8

Minn. R. Evid. 404(b). It is improper to use *Spreigl* evidence to suggest "that the defendant has a propensity to commit the crime or that the defendant is a proper candidate for punishment for his or her past acts." *State v. Fardan*, 773 N.W.2d 303, 315 (Minn. 2009) (quotation omitted). *Spreigl* evidence may not be admitted in a criminal prosecution unless

> 1) the prosecutor gives notice of its intent to admit the evidence consistent with the rules of criminal procedure; 2) the prosecutor clearly indicates what the evidence will be offered to prove; 3) the other crime, wrong, or act and the participation in it by a relevant person are proven by clear and convincing evidence; 4) the evidence is relevant to the prosecutor's case; and 5) the probative value of the evidence is not outweighed by its potential for unfair prejudice to the defendant.

Minn. R. Evid. 404(b). "If it is unclear whether the *Spreigl* evidence is admissible, the benefit of the doubt should be given to the defendant and the evidence should be excluded." *Campbell*, 861 N.W.2d at 102.

Schwartz argues that the *Spreigl* evidence presented at trial was inadmissible because it was irrelevant to the case and unduly prejudicial. *Spreigl* evidence may be admitted "to show a common scheme or plan." *State v. Ness*, 707 N.W.2d 676, 687 (Minn. 2006). This exception permits the admission of "evidence of offenses which, because of their marked similarity in modus operandi to the charged offense, tend to corroborate evidence of the latter." *Id.* at 687-88 (quotation omitted).

The evidence may be used "to establish that the conduct on which the charged offense was based actually occurred or to refute the defendant's contention that the victim's testimony was a fabrication or a mistake in perception." *Id.* at 688; *see also*

9

*State v. Wermerskirchen*, 497 N.W.2d 235, 241-42 (Minn. 1993) (explaining that *Spreigl* evidence is admissible because it is not offered to show that the defendant is a bad person and raise an inference that he acted in conformity with his bad character, but to show that the conduct on which the charge is based actually occurred). The supreme court has indicated that the common-scheme-or-plan exception is particularly relevant "in the specific context of rape and sex abuse prosecutions, particularly child sex abuse prosecutions." *Id.* at 240-42 (discussing the admission of *Spreigl* evidence under this exception in cases involving sex crimes).

The state introduced into evidence a transcript of a juvenile hearing where Schwartz was adjudicated a juvenile delinquent.[1] Schwartz also testified at trial that, when he was thirteen and his sister E.S. was five or six, he asked her to put his penis in her mouth, but that act did not occur.

The state also called witnesses at trial to testify about Schwartz's niece B.N.'s reports of sexual abuse by Schwartz. B.N. reported that, in 2009, Schwartz sexually

---

[1] Schwartz contends that the transcript was inadmissible as *Spreigl* evidence because his juvenile conduct did not demonstrate a common scheme or plan. Schwartz did not argue in district court, and has not argued on appeal, that the transcript was inadmissible because it showed a juvenile adjudication. "The disposition of the child [in a juvenile court proceeding] or any evidence given by the child in the juvenile court shall not be admissible as evidence against the child in any case or proceeding in any other court . . . ." Minn. Stat. § 260B.245, subd. 1 (2012). But we conclude that the error in admitting evidence of Schwartz's juvenile adjudication was harmless. *See Rossberg*, 851 N.W.2d at 615 (stating that an erroneous admission of *Spreigl* evidence is harmless unless the error substantially influenced the verdict). This case was tried to the district court, and the court found that O.S.'s testimony was "sufficient in itself" to prove Schwartz guilty of criminal sexual conduct even without *Spreigl* evidence. The court found that O.S.'s allegations against Schwartz were "credible and consistent," and her allegations were corroborated by photographs and videos of O.S. discovered on Schwartz's computer.

abused four juvenile female relatives, including O.S., E.S., and B.N., in his basement bedroom. B.N. reported that Schwartz instructed the girls to take off their pants and underwear, took off his own pants and underwear, had each girl sit on top of his genitalia, and "used his penis and played with our vaginas." B.N. also testified that Schwartz "used his private area and was playing with mine" on another occasion when she was three years old.

The district court determined that the *Spreigl* evidence was admissible to test Schwartz's defense that O.S. fabricated her allegations of sexual abuse and to show a common scheme or plan of sexual misconduct "because of the ages, the relative relationship, all female, occurring in Mr. Schwartz's zone of privacy."

The *Spreigl* evidence demonstrated a course of sexual abuse by Schwartz of juvenile female relatives in his home through inappropriate touching and attempted touching. This evidence bears "a marked similarity" to O.S.'s testimony that Schwartz "used to touch me inappropriately" both over and under clothes "[o]n my private areas" and "used to try to have sex with me." O.S. testified that this conduct occurred in their home, began when she was around three years old, and continued until Schwartz was arrested. The events with E.S. and B.N. would have occurred approximately during this same period. *Cf. Wermerskirchen*, 497 N.W.2d at 242 (concluding that *Spreigl* evidence of other sexual misconduct by the defendant was admissible because it "served to complete the picture of defendant, to put his current conduct in its proper and relevant context" and "was highly relevant in that it showed an ongoing pattern of opportunistic fondling of young girls within the family context and, therefore, tended to disprove the

11

defense that [the victim, defendant's daughter,] was fabricating or imagining the occurrence of sexual contact").

Schwartz argues that the true purpose and effect of the *Spreigl* evidence was to demonstrate bad character and a propensity for sexually abusing girls. The supreme court has recognized that there is a fine line between using *Spreigl* evidence for these improper and prejudicial purposes and a proper use of *Spreigl* evidence under the common-scheme-or-plan exception. *Ness*, 707 N.W.2d at 687. But the supreme court has stated that the admission of *Spreigl* evidence is less likely to be unfairly prejudicial if the case is tried to a court rather than to a jury. *See State v. Burrell*, 772 N.W.2d 459, 467 (Minn. 2009) ("The risk of unfair prejudice to [the defendant] is reduced because there is comparatively less risk that the district court judge, as compared to a jury of laypersons, would use the evidence for an improper purpose or have his sense of reason overcome by emotion. Indeed, excluding relevant evidence at a bench trial on the grounds of unfair prejudice is in a sense ridiculous." (quotation and citations omitted)). The district court did not abuse its discretion by admitting the *Spreigl* evidence of Schwartz's sexual conduct with E.S. and B.N. to refute Schwartz's defense that O.S. fabricated her allegations of sexual abuse and to show a common scheme or plan of sexual misconduct.

**III.**

Schwartz argues that the district court abused its discretion by permitting Investigator Lang to testify regarding delayed reporting by juvenile sexual-abuse victims. Schwartz contends that Lang was not "qualified as an expert by knowledge, skill,

12

experience, training, or education" and that the testimony did not "assist the trier of fact to understand the evidence or to determine a fact in issue."

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Minn. R. Evid. 702. "Rulings concerning the admission of expert testimony generally rest within the sound discretion of the district court and will not be reversed absent a clear abuse of discretion." *State v. Mosley*, 853 N.W.2d 789, 798–99 (Minn. 2014); *see also State v. Ferguson*, 804 N.W.2d 586, 604 (Minn. 2011) (stating that decisions about whether an expert is qualified to provide testimony and whether the testimony will assist the fact-finder are within the district court's discretion).

A.      *Qualification as an Expert*

A witness who testifies as an expert must be "qualified as an expert by knowledge, skill, experience, training, or education." Minn. R. Evid. 702; *see also* Minn. R. Evid. 702 1977 comm. cmt. ("The qualifications of the expert need not stem from formal training, and may include any knowledge, skill, or experience that would provide the background necessary for a meaningful opinion on the subject."). Lang testified that he completed multiple training courses dealing with interviewing children and testifying as an expert witness and that these courses included mock interviews, mock trials, and real scenarios. He stated that his training included the topic of delayed reporting. He also stated that he had worked in the area of juvenile sex crimes since August of 2009, had

13

worked on 85 cases of juvenile sex crime, and had conducted the child interviews in 30 cases.

Schwartz argues that Lang was not qualified to provide testimony that juveniles who experience sexual abuse commonly delay reporting the abuse for months or years. But he cites no authority for his argument that a witness who testifies about delayed reporting must have worked on many more cases than Lang worked on or must have a degree in psychology or social work. *See State v. Carillo*, 623 N.W.2d 922, 926 (Minn. App. 2001) ("Minnesota appellate courts have permitted police officers to provide expert testimony concerning subjects that fall within the ambit of their expertise in law enforcement."), *review denied* (Minn. June 19, 2001).

Although Schwartz correctly notes that the state did not "formally move[]" to qualify Lang as an expert, he cites no authority for his claim that a motion is a prerequisite for expert testimony. *Cf. State v. McCoy*, 631 N.W.2d 446, 453 (Minn. App. 2001) (affirming a district court's reliance on an expert report on sex offenders "even though the record lacks a formal statement by the [district] court that [the report's author] is an expert" (quotation marks omitted)). When Lang began to testify about delayed reporting, defense counsel objected on the basis that the investigator had not been qualified as an expert. Lang then testified about his training and experience on the topic, and the district court overruled defense counsel's objection and permitted the testimony. The district court did not abuse its discretion by determining that Lang was qualified to provide testimony on the topic of delayed reporting by juvenile sexual-abuse victims.

14

*B.*    *Assistance to the Fact-Finder*

Expert testimony will not assist the fact-finder if "the subject of the testimony is within the knowledge and experience of a [fact-finder] and the testimony of the expert will not add precision or depth to the [fact-finder's] ability to reach conclusions about the subject which is within that experience." *Ferguson*, 804 N.W.2d at 604 (quotation omitted). The supreme court has recognized that expert testimony regarding behavioral characteristics typically displayed by juvenile sexual-abuse victims, such as delayed reporting, may be helpful to the fact-finder and is admissible in the discretion of the district court. *See, e.g.*, *State v. Hall*, 406 N.W.2d 503, 505 (Minn. 1987) (stating that "we hold that in cases where a sexual assault victim is an adolescent, expert testimony as to the reporting conduct of such victims . . . is admissible in the proper exercise of discretion by the [district] court"); *State v. Myers*, 359 N.W.2d 604, 610 (Minn. 1984) (stating that, in cases involving a sexually abused child, the fact-finder is "often faced with determining the veracity of a young child who tells of a course of conduct carried on over an ill-defined time frame and who appears an uncertain or ambivalent accuser and who may even recant," and thus "[b]ackground data providing a relevant insight into the puzzling aspects of the child's conduct and demeanor which the [fact-finder] could not otherwise bring to its evaluation of her credibility is helpful and appropriate").

Schwartz argues that Lang's testimony was not helpful to the district court because O.S. testified about why she delayed reporting the sexual abuse by Schwartz. O.S. testified that she "didn't tell anyone that [Schwartz] wrongfully touched [her]" because she "was scared that he would hurt [her]." Because Schwartz claimed that O.S.

15

fabricated her story and O.S.'s testimony explaining why she delayed reporting could be part of the fabrication, the expert testimony that O.S.'s behavior is common for juvenile sexual-abuse victims was helpful in determining whether the abuse occurred. The district court did not abuse its discretion by determining that Lang's testimony on the topic of delayed reporting by juvenile sexual-abuse victims assisted the court as the fact-finder.

**IV.**

The district court imposed three consecutive and 18 concurrent terms of imprisonment and also ordered Schwartz to pay $900 in fines, consisting of a $50 fine for each of nearly all of Schwartz's convictions. The district court stated that "consecutive" fines were being imposed. Schwartz argues that he should be required to pay $150 in fines, consisting of a $50 fine for each of the counts for which the consecutive terms of imprisonment were imposed. A sentence imposed by a district court is reviewed for an abuse of discretion. *State v. Myers*, 627 N.W.2d 58, 61-62 (Minn. 2001).

We have found no authority that uses the terms "consecutive" or "concurrent" to describe a fine. But our review of caselaw reveals that separate fines are regularly required for separate convictions even when the terms of imprisonment for the convictions are imposed to run concurrently. *See, e.g.*, *State v. Wallace*, 558 N.W.2d 469, 472 (Minn. 1997); *State v. O'Hagan*, 474 N.W.2d 613, 623 (Minn. App. 1991), *review denied* (Minn. Sept. 25, 1991); *State v. Sargent*, 355 N.W.2d 179, 180-81 (Minn. App. 1984). The district court did not abuse its discretion by ordering Schwartz to pay $900 in fines.

**Affirmed.**

16