*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

## STATE OF MINNESOTA
## IN COURT OF APPEALS
## A15-1259

State of Minnesota,
Respondent,

vs.

Blake Adam Schneider,
Appellant.

**Filed July 25, 2016**
**Affirmed**
**Reilly, Judge**

Sherburne County District Court
File No. 71-CR-13-1763

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Kathleen A. Heaney, Sherburne County Attorney, Leah G. Emmans, Assistant County Attorney, Elk River, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reilly, Presiding Judge; Worke, Judge; and Smith, Tracy M., Judge.

## UNPUBLISHED OPINION

**REILLY**, Judge

On appeal from his conviction of third-degree criminal sexual conduct, appellant argues (1) he was denied his right to a fair trial by the admission of a lay witness's

testimony on the characteristics of sex assault cases involving 14-year-olds; and (2) he was deprived of his constitutional right to a fair trial when the prosecutor committed misconduct by vouching for the credibility of the complainant and by encouraging the jury to draw an implication from appellant's exercise of his right to remain silent. Because appellant was not prejudiced by the admission of the testimony on the characteristics of assault cases, and the prosecutorial misconduct does not require reversal to ensure the fairness and integrity of the judicial proceedings in this particular case, we affirm.

**FACTS**

In April 2012, A.K.T. ran away from home to live with her stepsister, W.T. W.T. lived with her boyfriend, her three-year old daughter, and appellant Adam Blake Schneider. One night in June 2012, A.K.T. babysat for W.T.'s daughter at the home with her friend, A.F. Appellant was also present with his young daughter. A.K.T., A.F., and appellant "hung out" in the living room and watched television until A.F. went home. Appellant had been drinking beer and gave A.K.T. beer which caused her to feel impaired. Appellant had sexual intercourse with A.K.T. on a blanket on the living room floor and in her bedroom. Appellant ejaculated on A.K.T.'s stomach and instructed her to take a shower. After she got out of the shower appellant told her "that [she] had to remember not to tell anyone because if [she] did he would go to jail." At the time of the sexual intercourse A.K.T. was 14 years old and appellant was 25 years old.

Shortly thereafter, A.K.T. told A.F. that appellant had sexual intercourse with her. A few months later, A.K.T. told her school counselor, and the counselor contacted the Elk River Police Department. In December 2012, the police department contacted Julie Mlsna,

2

a child protection worker who had previous experience with A.K.T.'s family and asked her to conduct an interview of A.K.T. During the interview A.K.T. told Mlsna that in June 2012 appellant had sexual intercourse with her in the living room and in her bedroom at W.T.'s house.

Appellant was charged by complaint with third-degree criminal sexual conduct in violation of Minn. Stat. § 609.344, subd. 1(b), in December 2013. He was convicted by jury in February 2015. In June 2015, he was sentenced to 91 months in prison. This appeal follows.

## DECISION

## I.

Appellant argues he was denied the right to a fair trial because of the admission of Mlsna's testimony about the characteristics of sexual assault cases involving 14-year-old victims. On the first day of trial the state indicated its intent to elicit testimony from Mlsna regarding the typicality of delayed reporting by sexual assault victims based on Mlsna's expertise in interviewing juvenile victims of sexual assault.[1] The district court asked if the state intended to qualify Mlsna as an expert, and the state indicated it "could." Appellant

_____

[1] Mlsna is the lead Child Protection Investigator for Sherburne County Health and Human Services in the In-take Child Protection Unit. She holds a bachelor's degree in child development and family life with a minor in psychology and a master's degree in counseling psychotherapy with an emphasis in marriage and family therapy. She has extensive experience working in the child protection system and serves on a multidisciplinary team for child forensic sexual abuse-type cases. She has had extensive training in the "CornerHouse" method of forensic interviewing. She has conducted over 500 forensic interviews and, at times, she has been called upon by the FBI and the BCA to conduct interviews in high profile cases.

argued that the district court should preclude this testimony because it was expert testimony and the state did not provide proper notice. The district court ruled:

> I will allow Ms. Mlsna provided you provide the Court with an adequate foundation, not necessarily that she's an expert but that she has experience with reporting, to testify that generally speaking it's not unusual for reporting to be delayed under circumstances where someone in this age range has been sexually assaulted. But if you're planning on going further with that you'll have to provide [defense counsel] between now and tomorrow with a CV and essentially what you intend to elicit in terms of so-called expert testimony. I think based upon her experience, and again I'll have to hear the foundation for what you're going to outline, I think very limited information as I stated would be appropriate.

At trial, after establishing that A.K.T. waited until December 2012 to report the sexual assault that occurred in June 2012, the state asked Mlsna if delayed reporting was unusual in sexual assault cases with 14-year-old victims. The following exchange occurred which appellant challenges on appeal:

> MLSNA: You know that's not unusual and that can happen for a variety of reasons where kids later disclose, and I don't -- a wide variety being from kids feel safe to maybe they're in therapy, it could be a trigger, something reminds her what took place, a recollection where kids then begin to tell their story. It could be a wide variety as to why kids disclose six months later and it could be several years later.
> THE STATE: And rather silly question, but she doesn't describe short of the fact that Mr. Schneider's daughter may have been awake; she doesn't describe any witnesses to this, is that right?
> MLSNA: That is correct.
> THE STATE: Is that unusual?
> MLSNA: In regards to?
> THE STATE: People having -- a 14-year-old having a sex with a 25-year old?
> MLSNA: That there would be witnesses present?
> THE STATE: That there wouldn't be witnesses present.

4

> MLSNA: Absolutely, right, correct, there wouldn't be.
> THE STATE: Is that normal?
> MLSNA: Typically.

*Expert Testimony*

Appellant contends the district court erred by failing to treat Mlsna's testimony regarding the typicality of delayed reporting as expert testimony. Minnesota courts have repeatedly held that the typicality of delayed reporting is expert testimony because it requires specialized knowledge that is not within the common knowledge of lay people. *State v. Obeta*, 796 N.W.2d 282, 291 (Minn. 2011) (concluding "that expert testimony about counterintuitive behaviors of child- or adolescent-victims of sexual assault could aid jurors in their fact-finding"); *State v. Hall*, 406 N.W.2d 503, 505 (Minn. 1987) ("[I]n cases where a sexual assault victim is an adolescent, [general] expert testimony as to the reporting conduct of such victims and as to continued contact by the adolescent with the assailant is admissible in the proper exercise of discretion by the trial court. . . ."); *State v. Myers*, 359 N.W.2d 604, 610 (Minn. 1984) (holding that expert testimony into "puzzling aspects of the child's conduct and demeanor which the jury could not otherwise bring to its evaluation" of a child-victim of criminal sexual conduct was helpful to the jury). As such, we agree with appellant's characterization of the testimony as expert testimony, and the district court erred when it referred to testimony regarding the typicality of delayed reporting as "so-called" expert testimony.

*Discovery Violation*

Because the state did not provide proper notice of the expert testimony, appellant argues that a discovery violation occurred. Whether a discovery violation occurred is a

5

question of law, which we review de novo. *State v. Bailey*, 677 N.W.2d 380, 397 (Minn. 2004). Expert testimony is subject to different discovery rules than lay testimony. Pursuant to the Minnesota Rules of Criminal Procedure, before the omnibus hearing the prosecutor must disclose the following regarding "[a] person who will testify as an expert but who created no results or reports in connection with the case": "a written summary of the subject matter of the expert's testimony, along with any findings, opinions, or conclusions the expert will give, the basis for them, and the expert's qualifications." Minn. R. Crim. P. 9.01, subd. 1(4)(c). The state failed to comply with the notice requirement of rule 9.01 because the state did not disclose its intent to have Mlsna testify as an expert before the omnibus hearing and there is no record that appellant ever received any written summary of the subject matter of Mlsna's testimony or a summary of Mlsna's qualifications. Thus, a discovery violation occurred.

Even when a discovery violation occurs, the state's violation of a discovery rule will not result in a new trial absent a showing that appellant was prejudiced. *State v. Palubicki*, 700 N.W.2d 476, 489 (Minn. 2005). Appellant argues he was prejudiced by the improper admission of Mlsna's testimony because the entire case depended on whether the jury believed A.K.T. Appellant relies on *State v. Vue*, where we concluded the admission of improper expert testimony warranted reversal where the defendant's "conviction was based on disputed testimonial evidence" and "[t]he outcome of the trial depended on whom the jury believed." 606 N.W.2d 719, 724 (Minn. App. 2000), *review denied* (Minn. May 16, 2000). *Vue* is distinct from the present case because the expert testimony in *Vue* was inadmissible. Appellant does not argue that regardless of the discovery violation the

6

testimony regarding the typicality of delayed reporting is inadmissible. Here, defense counsel had the opportunity to extensively cross-examine Mlsna regarding the typicality of delayed reporting and her qualifications to provide such testimony which mitigated any prejudice suffered by the lack of notice. As such, the error was harmless and reversal is not required.

*Exceeding the scope of permissible testimony*

Appellant also argues that the prosecutor committed misconduct by exceeding the scope of the district court's limitation on Mlsna's testimony by eliciting testimony regarding the typicality of eyewitnesses to sexual assaults of juveniles. The district court stated Mlsna could "testify that generally speaking it's not unusual for reporting to be delayed under circumstances where someone in this age range has been sexually assaulted" and noted this "very limited information . . . would be appropriate." At trial, after Mlsna testified that A.K.T. did not describe any witnesses to the sexual assault, the state asked whether it was unusual that there wouldn't be any witnesses present to a 14-year-old having sex with a 25-year-old.

Appellant did not object to the alleged prosecutorial misconduct. Generally, if a defendant fails to object to misconduct at trial, he "forfeits the right to have the issue considered on appeal." *State v. Powers*, 654 N.W.2d 667, 678 (Minn. 2003). However, if the error is sufficient, an appellate court may review. *Id*. Appellate courts review unobjected-to prosecutorial misconduct under a modified plain-error test. *State v. Ramey*, 721 N.W.2d 294, 299 (Minn. 2006). "[T]here must be (1) error, (2) that is plain, and (3) affects substantial rights. If these three prongs are satisfied, the court then assesses

whether the error should be addressed to ensure fairness and the integrity of the judicial proceedings." *Id.* at 302 (citation omitted). The burden is on appellant to demonstrate that error occurred and that the error was plain. *Id.*

Plain error is usually shown if an error "contravenes case law, a rule, or a standard of conduct." *Id.* Although, it is improper trial conduct for a prosecutor to elicit inadmissible evidence, *id.* at 300, appellant relies on only a single question asked by the prosecutor to argue that the prosecutor exceeded the scope of the district court's order. *See State v. Wilford*, 408 N.W.2d 577, 580-81 (Minn. 1987) (affirming conviction where questions were "not deliberately prejudicial" and were "brief, isolated, not repeated, and were unlikely to have a substantial impact on the jury"). Moreover, the expert testimony that typically there are not third-party witnesses to sex crimes involving children could have little impact on the jury, since common sense would suggest that is the case. As such, appellant has not met his burden in demonstrating that the single question affected his substantial rights.

## II.

Appellant argues the prosecutor committed misconduct during the closing argument by encouraging the jury to draw an implication from his exercise of his right to remain silent and by vouching for A.K.T.'s credibility.

*Comment on appellant's failure to testify*

Appellant exercised his right not to testify at trial. During the state's rebuttal the prosecutor argued

8

> You have to decide why you believe [A.K.T.]. She told a version of events six months later, everything before was verified, everything after was verified. And all of those other people, why those other people are all important, it's because *it's not a he said, she said*, it's a what [A.F.], Julie Mlsna, Detective Besser, Officer Garcia, [W.T.], [D.T.], and [A.K.T.] said.

(Emphasis added.)

Appellant objected to the prosecutor's statement that "it's not a he said, she said" on the grounds that it asked the jury to draw an inference from his right to remain silent. The district court offered to give a cautionary or curative instruction, but appellant indicated he did not want a curative instruction because it would highlight the fact that he had chosen not to testify.

"While prosecutors do have the right to legitimately argue, analyze, explain evidence and present proper inferences, they may not directly or indirectly comment on a defendant's failure to testify." *State v. DeRosier*, 695 N.W.2d 97, 106-07 (Minn. 2005) (citations omitted). "Indirect references to a defendant's failure to testify are prohibited if they either (1) manifest the prosecutor's intention to call attention to the defendant's failure to testify, or (2) are such that the jury would naturally have understood them as a comment on defendant's failure to testify." *Id.* at 107 (quoting *Sidebottom v. Delo*, 46 F.3d 744, 759 (8th Cir.1995)).

"With respect to claims of prosecutorial misconduct arising out of closing argument, we consider the closing argument as a whole rather than focus on particular 'phrases or remarks that may be taken out of context or given undue prominence.'" *State v. Johnson*, 616 N.W.2d 720, 728 (Minn. 2000) (quoting *State v. Walsh*, 495 N.W.2d 602, 607 (Minn.

9

1993)).  The phrase "he said, she said" is understood in common usage to refer to an event with conflicting accounts with only two witnesses.  The prosecutor followed that statement by listing six witnesses who corroborated A.K.T.'s version of events.  It does not appear the prosecutor was manifesting an intention to call attention to appellant's failure to testify.  Instead, when viewed in context it appears the prosecutor used the phrase to highlight the fact that other witnesses corroborated A.K.T.'s version of the events.  Similarly, given the statement's brief nature referencing appellant and the common use of the phrase, it does not appear a jury would understand it as a comment on appellant's failure to testify.  Although the phrase "it's not a he said, she said," is inartful, it does not rise to the level of prosecutorial misconduct in this case based on the context in which it was used.

*Improper Vouching*

The state's opening argument began "Ladies and Gentlemen, this case comes down to who do you believe and why," and concluded with "[s]o, Ladies and Gentlemen, who are you going to believe and why?  At the end after we present all of the evidence I'll tell you who to believe; I'll tell you to believe [A.K.T.], and if you believe [A.K.T.] you'll find him guilty."  The state's closing argument began with "[w]ho do you believe and why?  Let's cut to the chase.  If you believe [A.K.T.]; he's guilty, end of story," and concluded with "[b]elieve [A.K.T.]; find him guilty."

Appellant alleges the directives by the prosecutor to the jury "I'll tell you to believe [A.K.T.]" and "believe [A.K.T.]" are improper vouching amounting to prosecutorial misconduct.  Appellant did not object to these statements at trial.  Appellate courts review unobjected-to prosecutorial misconduct under a modified plain-error test.  *Ramey*, 721

10

N.W.2d at 299.  Appellant must show there was error that is plain.  *Id.*  Appellant asserts plain error occurred in this case because the statements were a "direct endorsement of [A.K.T.'s] credibility."

"The assessment of a witness's credibility 'is exclusively the province of the jury,'" *State v. McCray*, 753 N.W.2d 746, 754 (Minn. 2008) (quoting *Francis v. State*, 729 N.W.2d 584, 589 (Minn. 2007)), and "[i]t is improper for the state to express a personal opinion on [a witness's] credibility."  *State v. Wright*, 719 N.W.2d 910, 918 (Minn. 2006).  Vouching occurs "when the government implies a guarantee of a witness's truthfulness, refers to facts outside the record, or expresses a personal opinion as to a witness's credibility."  *State v. Patterson*, 577 N.W.2d 494, 497 (Minn. 1998) (quotation omitted).  In *Swanson*, the supreme court held that the statement "[t]he state believes [the witness] is very believable" was "impermissible vouching on its face because the state directly endorsed the credibility of [the] witness."  *State v. Swanson*, 707 N.W.2d 645, 656 (Minn. 2006).  Here, the prosecutor's statements "I will tell you who to believe . . . [b]elieve [A.K.T.]" constituted misconduct because the prosecutor could reasonably be understood to be stating a personal opinion on A.K.T.'s credibility.  *See Ture v. State*, 681 N.W.2d 9, 20 (Minn. 2004) (concluding that "the use of the first-person pronoun 'I' during closing argument . . . was an improper interjection of personal opinion into the argument").

Appellant has met his burden of establishing error that is plain.  Under the modified plain-error test for prosecutorial misconduct, the burden then shifts to the state, and the state must show that there is "no reasonable likelihood that the absence of the misconduct in question 'would have had a significant effect on the verdict of the jury.'"  *Ramey*, 721

11

N.W.2d at 302 (quotation omitted). The state has made no such argument on appeal, and merely asserts "[t]here was no error, plain or otherwise, that affected appellant's substantial rights." Thus, the state has not met its burden in establishing the error did not affect appellant's substantial rights.[2]

Because we conclude appellant has satisfied all three prongs of the modified plain-error test for prosecutorial misconduct, we next assess "whether the error should be addressed to ensure fairness and the integrity of the judicial proceedings." *Id.* Under Minn. R. Crim. P. 31.02, review of unobjected-to errors is discretionary. *State v. Griller*, 583 N.W.2d 736, 742 (Minn. 1998). In the present case, the jury found A.K.T.'s version of the events to be credible. While we do not condone the prosecutor's directive to the jury to believe A.K.T., we are also not persuaded that absent the prosecutor's statement, the jury would have returned a different verdict. A.K.T. told a consistent version of the events of the night in question to multiple witnesses including A.F., W.T., and Mlsna, and the witnesses corroborated A.K.T.'s story. After a careful review of the trial transcript we conclude that the prosecutorial misconduct does not require reversal to ensure the fairness and integrity of the judicial proceedings. As such, reversal is not warranted.

**Affirmed.**

_____

[2] However, we note that the jury was properly instructed "You are the sole judges of whether a witness is to be believed and of the weight to be given a witness's testimony." We presume that the jury followed the court's instruction. *State v. Pendelton*, 706 N.W.2d 500, 509 (Minn. 2005). This instruction to the jury mitigated harm to appellant caused by the prosecutorial misconduct.